FILED

2005 Dec-22  PM 02:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **BRENDA DUBOSE,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 4:04-CV-1473-RDP** |
| | } | |
| **METROPOLITAN LIFE** | } | |
| **INSURANCE COMPANY,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

## I.  INTRODUCTION

Pending before the court are cross motions for summary judgment.  Plaintiff Brenda Dubose filed her motion (Doc. #52) on August 16, 2005.  Defendant Metropolitan Life Insurance Company ("MetLife") filed its motion (Doc. #53) on September 6, 2005.   The parties had previously filed cross motions for summary judgment on February 22, 2005.  (Docs. #23, #24).  The court held a hearing on all pending motions at 2:00 p.m. on May 10, 2005, in courtroom 7A of the Hugo L. Black U.S. Courthouse, 1729 Fifth Avenue North, Birmingham, Alabama.

Because there were several issues that required further development by the parties, the court denied without prejudice the earlier motions for summary judgment (Doc. #45), allowed for amended pleadings (Doc. #45), and established a new dispositive motion deadline of September 26, 2005.  (Doc. #50).  As discussed more fully below, because neither party has met the burden of showing the absence of material factual disputes and entitlement to judgment as a matter of law, both motions for summary judgment are due to be denied.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial

burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.* facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest

3

on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343,

358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## III.   STATEMENT OF FACTS[1]

### A.      Introduction and Plan Provisions

Plaintiff Brenda Dubose was employed as a salesperson for Unisource Worldwide, Inc.

("Unisource") and was a participant in the Unisource Long Term Disability Plan (the "Plan"). AF

No. 1.[2]  On June 2, 2004, Plaintiff filed her Complaint in this action seeking additional disability

benefits under the Plan.  AF No. 31; (Doc. #1 at Compl.).  The Plan is governed by the Employee

Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"), and on July 2, 2004,

this case was removed to this court on the basis of federal question jurisdiction which is bestowed

by ERISA preemption.  (Doc. #1).  AF No. 2.

---

[1]Although there are cross-motions for summary judgment, each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law.  *See Chambers & Co. v. Equitable Life Assur. Soc.*, 224 F.2d 338, 345 (5th Cir. 1955); *Matter of Lanting*, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996).  The court will consider each motion independently, and in accordance with the Rule 56 standard.  *See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit."  *See* Wright, Miller & Kane, *Federal Practice and Procedure* § 2720, at 327-28 (3d ed. 1998).  Also, these are the facts for summary judgment purposes only; they may not be the actual facts.  *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("'[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion [ ] may not be the actual facts.'") (citation omitted).

[2]The designation "AF" stands for admitted fact and indicates a fact offered by MetLife that Plaintiff has admitted in her written submissions on summary judgment, in her deposition testimony, or by virtue of any other evidence offered in support of her case.  Whenever Plaintiff has adequately disputed a fact offered by MetLife, the court has accepted Plaintiff's version.  The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of MetLife's Statement of Facts as set forth in Doc. #53 and responded to by Plaintiff in Doc. #54.  Any other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

On June 16, 2005, Plaintiff amended her Complaint to state a claim for discrimination under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA").  (Doc. #49).  As one of the Plan's summary plan descriptions (MetLife 00001-00026) (hereinafter the "Liberty Life SPD") reflects, Liberty Life Assurance Company of Boston ("Liberty Life") previously provided administrative services for the Plan.  AF No. 3. According to the Liberty Life SPD, "Disability" or "Disabled" means:

> (i)    If you are eligible for the 24 Month Own Occupation Benefit, 'Disability' or 'Disabled' means during the Elimination Period and the next 24 months of Disability you are unable to perform all of the material and substantial duties of your occupation on an Active Employment basis because of an Injury or Sickness; and
>
> (ii)   After 24 months of benefits have been paid, you are unable to perform, with reasonable continuity, all of the material and substantial duties of your own or any other occupation for which you are or become reasonably fitted by training, education, experience, age and physical and mental capacity.

AF No. 4.

As described in the Liberty Life SPD, the Plan has limited benefits for certain conditions, including a "Mental Illness and Alcohol or Drug Abuse Limitation."  AF No. 5.  In a section describing "What Limitations Will Apply for Mental Illness and Alcohol and Drug Abuse," the Liberty Life SPD states as follows:

> The Benefit for Disability due to Mental Illness and Alcohol or Drug Abuse will not exceed 24 months of Monthly Benefit payments unless you meet one of these situations:
>
> > 1.     You are in a Hospital or Institution for Mental Illness and Alcohol or Drug Abuse at the end of the 24 month period. The Monthly Benefit will be paid during the confinement.
> >
> > If you are still Disabled when you are discharged, the Monthly Benefit will be paid for a recovery period of up to 90 days.

> If you become reconfined during the recovery period for at least 14 days in a row, benefits will be paid for the confinement and another recovery period of up to 90 more days.
>
> 2.      You continue to be Disabled and become confined for the Mental Illness and Alcohol or Drug Abuse:
>
> a.      after the 24 month period; and
> b.      for at least 14 days in a row.

The Monthly Benefit will be payable during the confinement for the Mental Illness and Alcohol or Drug Abuse. The Monthly Benefit will not be payable beyond your Maximum Benefit Period.

AF No. 6.  The Liberty Life SPD cover page states that the Plan is "Effective Date: January 1, 1997"

and was "Revised 1/1/99."  AF No. 7.

Plaintiff was injured on January 24, 1997, and became disabled on October 27, 1998.  (Doc.

#54 at 3; *id.* ¶ 6).  As described in Plaintiff's Methodist Hospital Records of October 27, 1998:

> Her primary complaint is that the patient suffers chronic pain secondary to on-the-job injury in January of 1997.  The patient was lifted from a platform by machinery causing her upper body muscles to be pulled and two of her disks in her neck to become bulged.  She states she has been advised to undergo surgery, but this is no guarantee of satisfactory results . . . .  She has been receiving treatment through the Chamberlain Clinic for pain.

(Doc. #27 at Ex. 8 at MetLife 00273).  Similarly, on July 28, 1999, Liberty Life documented

Plaintiff's disability history as follows:

> File review done on this 41 Y.O. female w/dx of myofascial pain syndrome.  DOD 10/29/98.  She experienced an on the job injury in 1996 [sic] resulting in chronic pain syndrome.  Injury involved EE falling off of a skid on a forklift while doing inventory work.  She was tethered at the time to the top of the lift.  She reports to have sustained disc injuries to her C-spine and "pulled every muscle above the waist."

(Doc. #27 at Ex. 12 at MetLife 00156).

6

Liberty Life initially told Plaintiff in an August 6, 1999 letter that she was entitled only to the Plan's 24 months of mental illness benefits, Liberty Life reminded Plaintiff in a November 7, 2000 letter that Plaintiff was entitled only to the Plan's 24 months of mental illness benefits, and, in January of 2001, MetLife assumed Liberty Life's responsibilities related to the Plan and made the same decision that Plaintiff was entitled only to the Plan's 24 months of mental illness benefits.  AF No. 8.

Liberty Life and MetLife handled Plaintiff's claim for disability benefits using the Liberty Life SPD as the controlling plan document for determining what disability benefits the Plan might provide Plaintiff.  AF No. 9.  As of January 1, 2001, the Plan was changed to provide that Georgia-Pacific Corporation ("Georgia-Pacific") is the Plan Administrator and that Georgia-Pacific has the exclusive responsibility and complete discretionary authority to control the operation and administration of the Plan, with all powers necessary to enable it to properly carry out such responsibility, including but not limited to, the power to construe the terms of the Plan, to determine status and eligibility for benefits and to resolve all interpretative, equitable and other questions that all arise in the operation and administration of the Plan.  AF No. 10.

The 2001 Plan document provides that Georgia-Pacific has delegated to MetLife the responsibility of processing claims and "the administrative and interpretative discretion to resolve long-term disability claim denials and appeals under the plan's claims procedures."  AF No. 11. According to the 2001 Plan document, "[i]f MetLife denies your claim, you will be notified in writing . . . .  If you disagree with the decision, you may request a review of the decision by notifying MetLife in writing within 60 days of the date you receive notice of the denial."  AF No. 12.

**B.     Plaintiff's Claim for Disability Benefits**

On April 10, 1999, Plaintiff first submitted a Disability Claim Form to Liberty Life, indicating an injury date of January 24, 1997, and reflecting a date last worked of October 7, 1998. AF No. 13. Unisource provided payroll information showing that Plaintiff worked though October 1998. AF No. 14. On June 1, 1999, Plaintiff submitted a Disability Questionnaire to Liberty Life, which stated that she could not handle stress, that stress caused her pain, that her job had been stressful, and that she could not even go to the grocery store on most days. AF No. 15. Plaintiff initially sought disability benefits based on a diagnosis of depression, bipolar disorder, and myofascial pain. AF No. 16.

By letter dated August 6, 1999, Liberty Life told Plaintiff that the Plan had a 24 month limitation for mental illness benefits and approved Plaintiff for 24 months of disability benefits, with a "date of disability as October 29, 1998" and benefits becoming first payable, after the 180 day elimination period, on April 27, 1999. AF No. 17. By letter dated November 1, 2000, Liberty Life told Plaintiff again that she "became disabled October 29, 1998, and qualified for benefits on April 27, 1999," and that Liberty Life was "investigating [her] eligibility beyond the 24th month of benefits." AF No. 18. By letter dated November 7, 2000, Liberty Life notified Plaintiff that her disability benefits had a "limitation for disability due to a Mental Nervous disorder," that her 24 month benefit period would end April 26, 2001, and that if Plaintiff disagreed with this determination, she could request a review in writing. AF No. 19.

MetLife assumed the claims administration duties from Liberty Life. On February 5, 2001, MetLife notified Plaintiff that she might be eligible to receive disability benefits from the Social Security Administration ("SSA"):

> Our assessment of your condition indicates that you may be eligible for Social
> Security disability benefits.

(Doc. #54 ¶ 12; Doc. #27 at Ex. 23 at MetLife 00135).  Further, taking the evidence in a light most

favorable to Plaintiff, on March 2, 2001, MetLife forwarded medical records to attorney Martin

Keane, who successfully represented Plaintiff on her SSA disability claim.  (Doc. #54 ¶ 13; Doc. #27

at Ex. 26 at MetLife 00134).

By letter dated March 7, 2001, MetLife notified Plaintiff that disability benefits had a

"limitation for disability due to a Mental Nervous disorder," that the 24 month benefit period would

end April 26, 2001, and that if she disagreed and wished to appeal the decision, she could file a

written request for a review.  AF No. 20.  On April 3, 2001, Plaintiff telephoned MetLife indicating

that the Plan in 1997 "didn't have a mental or nervous provision."  AF No. 21.

The administrative record does not contain any written communication from Plaintiff (or any

other writing) which suggests that the 24 month limitation did not apply to Plaintiff, except for notes

from the telephone conversation on April 3, 2001.  AF No. 22.  On April 11, 2001, MetLife reviewed

with an account representative Plaintiff's assertion that the Plan in 1997 did not have a mental illness

limitation and determined that "there is a [mental/nervous provision] in the 1996/1997 contracts.

M/N would apply to claim.  In the revision, M/N was not deleted."  AF No. 23.  On April 3, 2001

(incorrectly dated 4/3/00 by Plaintiff), Plaintiff faxed a letter along with medical and psychological

records to MetLife requesting additional review of her disability claim as a physical disability, which

would provide benefits beyond the 24 month mental illness limitation.  AF No. 24.

On April 24, 2001, based on medical and psychological records furnished by the Plaintiff in

the April 3, 2001 request, MetLife referred Plaintiff's case to an independent physician consultant,

Dr. Gary P. Greenwood, to evaluate this question: "Does the main impairment appear to be 'mental/nervous' or 'physical?'" AF No. 25.  While Plaintiff points out that Dr. Greenwood did not review all the relevant records,[3] based upon the limited materials that he did study, he reported:

> Although the patient has complained of chest pain and shortness of breath, the file does not provide an objectively abnormal finding to explain these symptoms. Similarly, she complains of lower back pain but there is no indication of neurological deficits; MRI scans or CT-myelograms; or referrals to orthopedists, neurosurgeons, and/or pain-management professionals. As such, the patient's chest pain, back pain, and shortness of breath are all self-reported.

AF No. 26.  Following Dr. Greenwood's review of the medical and psychological records, MetLife sent Plaintiff a May 2, 2001 letter, writing that the information she provided to MetLife on April 3, 2001, and the previously submitted data, did not support a physical impairment that would continue disability benefits beyond the 24 month mental illness limitation.  AF No. 27.  The May 2, 2001 letter further stated that the medical information contained in MetLife's records indicated that Plaintiff's disabling condition was a mental illness, which has a 24 month benefit period and that period ended on April 26, 2001.  AF No. 28.  Plaintiff was also advised that if she disagreed with the letter and wished to appeal the decision she must "file a written request for review . . . no more than 60 days after you receive notice of the denial of the claim." AF No. 29.  However, as explained in her supplemental affidavit, Plaintiff never received MetLife's May 2, 2001 second denial letter. (Doc. #54 at 3).  Thus, she never made a subsequent written request for a review of the decision to end her disability benefits after May 2, 2001.  AF No. 30.

---

[3]The itemization of the records reviewed by Dr. Greenwood do not include numerous entries that tend to support disability due to chronic pain.  (Doc. #54 ¶ 38 at 5-8; Doc. #27 at Ex. 30 at Metlife 00046).  In addition, Dr. Greenwood did not review any hospital records relating to Plaintiff's hospitalization in August 2000 as those particular documents were never requested, despite Dr. Jackson's reference to Plaintiff's stay at Methodist Central Hospital during that time frame.  (Doc. #54 ¶ 30; Doc. 27 at Ex. 14; Doc. 27 at Ex. 24).

IV.     **ANALYSIS**

A.      **ERISA Standard of Review**

Based upon the original summary judgment papers and subsequently during a conference call held in this case on May 3, 2005, the court understood that the parties were in agreement that the appropriate standard of ERISA review for the court to use is *de novo* review of the administrative record.  However, in studying the most recent filings on summary judgment, the parties continue to spend significant time discussing the level of discretion afforded to MetLife.  MetLife ultimately contends that whether it had discretionary authority is immaterial because, it argues, that it is entitled to summary judgment regardless of any discretionary authority.  (Doc. #53 at Br. at 9-10).[4]  Against this backdrop, and for the purposes of its summary judgment analysis, the court will utilize a *de novo* review of Plaintiff's disability claim.

B.      ***De Novo* Review of Plaintiff's Disability Claim**

Under the review of denials framework set forth in *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004),[5] the court reviews the administrative record and decides

---

[4]In this same section of its brief, MetLife states, "While discretionary authority is an issue relevant to the scope of the evidence that the Court is to consider, whether MetLife has discretionary authority is otherwise immaterial to the pending motions."  (Doc. #53 at Br. at 9).

[5]In *Williams*, the Eleventh Circuit set forth a six-step model for use in judicially reviewing virtually all ERISA claim denials:

(1)     Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision; if it is not, then end the inquiry and affirm the decision).

(2)     If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

whether it either agrees or disagrees with the claims administrator's benefits-denial decision.  If the

court determines that the administrator's decision is correct, then summary judgment is due to be

entered in favor of MetLife.  However, if the court disagrees with MetLife's decision, then it looks

to the level of discretion afforded to the administrator in reviewing claims.  If the administrator is

not vested with discretion in reviewing claims, a court's *de novo* conclusion that the claim decision

is wrong ends the judicial inquiry and results in a reversal of the benefits determination.

    In *Williams*, the court concluded the insurer was correct in its decision to deny benefits under

a *de novo* review:

> Turning back to the instant case, we note that Kemper reviewed the medical records of several doctors, including Williams's own doctor, Dr. Michael Holt, in making its benefits-denial decision.  None indicated that Williams was completely incapable of working.  Kemper also had Williams examined by an independent medical examiner (IME), Dr. Charles Whestall. She indicated to Whestall that she was engaging normally in the significant activities of daily living, including caring for two young children and a granddaughter, cooking all meals, performing housework, tending to finances, and attending religious services. And instead of claiming that she could not work at all, she said that she would like to change to a less stressful job. Whestall concluded from her testing that her stress was "not overwhelming her capacity for

_____

> (3)    If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

> (4)    If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

> (5)    If there is no conflict, then end the inquiry and affirm the decision.

> (6)    If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it.

*Williams,* 373 F.3d at 1138 (footnotes omitted).

coping." Accordingly, we cannot say that Kemper's no-disability determination was de novo wrong under the terms of BellSouth's disability plan. Unlike the plan administrator in *Levinson*, Kemper thoroughly gathered and reviewed medical evidence concerning Williams's condition, including that of an IME.

373 F.3d at 1139.

A comparison of the actions taken by Kemper in the *Williams* case with the actions of MetLife in this lawsuit reveals marked differences. For example, Kemper retained an independent medical doctor to examine the plaintiff and give an opinion on her condition. MetLife did send some of Plaintiff's medical records to Dr. Greenwood for him to independently review; however, (i) the history of Plaintiff provided to him was incomplete; (ii) the review conducted was limited to paper; and (iii) the opinion was responsive to the question of whether Plaintiff was primarily mentally or physically disabled, not whether Plaintiff was both mentally <u>and</u> physically disabled. Also, Kemper based its finding of no disability upon the plaintiff's own admission that "she was engaging normally in the significant activities of daily living" and that she was not claiming a complete inability to work, but rather desiring a less stressful job. However, none of the evidence offered by Plaintiff bolsters MetLife's decision to discontinue disability benefits; rather, Plaintiff's testimony about pain, if believed, refutes it.

Given the conflicting evidence in the record regarding whether Plaintiff suffers from both mental and physical covered disabilities, the court does not understand why MetLife did not conclude that the use of an IME was appropriate. The court finds the case of *Shannon v. Jack Eckerd Corp.*, 113 F.3d 208 (11th Cir. 1997), cited by Plaintiff, to be highly instructive. In *Shannon*, the Eleventh Circuit applied the arbitrary and capricious standard and upheld the district court's decision

13

to remand the case to the administrator for a reasonable relevant inquiry.  In doing so, the court
stated:

> Eckerd's Plan administrator had an obligation to make a reasonably relevant inquiry
> and failed to do so at the time of the original determination. The district court did not
> err in directing that the Plan administrator consider all available evidence. As we
> stated in *Jett*, "Should [the beneficiary] wish to present additional information that
> might affect the determination of eligibility for benefits, the proper course would be
> to remand to [the plan administrator] for a new determination."

113 F.3d at 210.  The administrative record before the court shows that MetLife failed to make a
reasonably relevant inquiry as to Plaintiff's potentially disabling physical problems.  MetLife did not
have Plaintiff sit for an IME.

Nor did MetLife adequately address the effect of the Social Security's determination that
Plaintiff was disabled when the only Plan document before the court indicates that such
documentation is proof of total disability without any reference to a requirement of objective
evidence.[6]  (Doc. #27 at Ex. 3 at 15 § 4.2).  *See Kirwann v. Marriott Corp.*, 10 F.3d 784, 790 n.32
(11th Circuit 1994) (citing *Pierce v. American Waterworks Co., Inc.*, 683 F. Supp. 996, 1000 (W.D.
Pa.1988) ("A district court may consider the Social Security Administration's determination of
disability in reviewing a plan administrator's determination of benefits.")); *Ferguson v. Greyhound
Retirement & Disability Trust*, 613 F. Supp. 323, 325 (D.C. Pa. 1985) ("Plaintiff has no doubt

---

[6]The relevant provision states:

4.2 Presumption of Total Disability.  A Covered Employee's entitlement to and
receipt of disability benefits under the Federal Social Security Act shall constitute
proof of Total Disability for the purposes of the Plan.  Failure to apply for such
Federal disability benefits shall result in an automatic denial of benefits under the
Plan.

(Doc. #27 at Ex. 3 at 15 § 4.2)

14

established that given the same information about relevant factors, other administrative bodies (*i.e.* the Social Security Administration and Workmen's Compensation Board) using more stringent standards have decided differently [*i.e.* that plaintiff is disabled].")).  Instead, MetLife chose not to accept Plaintiff's disability determination from the Social Security Administration.  In doing so, MetLife reasoned that, because the Social Security Administration's determination was issued after the Plan's decision to end Plaintiff's disability benefits, its existence is immaterial to the Plan's prior determination.  However, as Judge Robert B. Propst of this court held in denying summary judgment under an arbitrary and capricious standard of review in *Howell v. Continental Casualty Co.*, *et al.*, 4:99-CV-1842-RBP, (N.D. Ala. Dec. 20, 1999) (Doc. #23), "cutting off [a claimant's] access to the review process by allowing no new information to be brought to light" is an abuse of discretion:

> [S]ince a defendant's duty to provide benefits "is a continuing one, its refusal to provide benefits is thus a continuing denial, the propriety of which is measured against the information available from time to time." . . . "Should [the beneficiary] wish to present additional information that might affect the determination of eligibility for benefits, the proper course would be to remand to [the plan administrator] for a new determination."  890 F.2d at 1140.

(Doc. #23 at 14 (citing *Shannon*, 113 F.3d at 210)).

In *Howell*, Judge Propst also utilized the most deferential standard of review and determined that an administrator acts arbitrarily and capriciously when it denies a claim solely on the lack of objective evidence when an "insured suffers from a recognized debilitating disease which is commonly known to defy quick and easy diagnosis, which has no 'dipstick' test, and which regularly baffles physicians by its impairing symptoms in light of unremarkable medical test results."  (Doc. #23 at 13-14).

15

While the particular diagnosis attributable to Plaintiff (*i.e.*, chronic pain syndrome) may differ from chronic fatigue syndrome, the logic of *Howell* still applies – how can an administrator reasonably require only objective evidence of a physical disability when the claimant's condition, by its very nature, is ill-suited for objective medical measurement?  As the court fails to see how such stretched reasoning by the administrator satisfies even the least stringent standard of review, the court does not hesitate in determining that MetLife's discontinuation of Plaintiff's disability benefits on the basis of lack of objective evidence is *de novo* wrong.

Based upon the record before it, the court is satisfied that MetLife's decision to discontinue Plaintiff's disability benefits due to a lack of objective evidence of a physical disability, especially without the benefit of an IME in light of Plaintiff's possible dual disability status is *de novo* wrong. Accordingly, MetLife's Motion for Summary Judgment is due to be denied.  As for Plaintiff's Motion for Summary Judgment, while the court does not anticipate that it will change its mind at trial on the ERISA claim, it recognizes that reasonable minds might disagree as to the conclusion reached on summary judgment.  (*Howell*, Doc. #23 at 14-15).  Therefore, the prudent course of action is to also deny Plaintiff's Motion for Summary Judgment, and set this case for trial.  *Id*.  In the meantime, the parties should independently discuss whether a remand to the Plan Administrator is appropriate.

## V.     CONCLUSION[7]

---

[7]Due to the nature of the court's decision, it is not necessary to address the remaining arguments posed by Plaintiff in support of her position on summary judgment with respect to her ERISA claim, including the appropriate effective date for the mental health benefits time limitation. Also, the court postpones ruling on the ADA issue in light of the letter that it received from Plaintiff's counsel dated December 16, 2005.  As pointed by Plaintiff's counsel, the Eleventh Circuit in *Slomcenski v. CitiBank, N.A.*, No. 04-11245, 2005 WL 3423156, at *8, *9 n.6 (11th Cir. Dec. 14, 2005) recently rejected a claim premised upon a plan's time limitation on the receipt of benefits

Neither party has met the burden of demonstrating the absence of material disputed facts and entitlement to judgment as a matter of law.  Accordingly, the court will enter an order denying summary judgment.

**DONE** and **ORDERED** this _____22nd_____ day of December, 2005.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

"[b]ecause Slomcenski [*i.e.,* the plaintiff] could not demonstrate that she was a qualified individual with a disability as required to bring a claim under the ADA."  Unless the *Slomcenski* decision is reversed by the United States Supreme Court or vacated by the Eleventh Circuit, when that decision becomes final it will mandate the dismissal of Plaintiff's ADA claim.  Finally, to the extent that MetLife contends that Plaintiff's ERISA claim is administratively barred due to her failure to appeal its May 2, 2001 benefits determination, there is a material factual dispute over whether Plaintiff ever received this subsequent correspondence and that precludes the entry of summary judgment in favor of MetLife on that ground.

17